# In the United States Court of Federal Claims
## No. 13-094 C

(E-Filed:  February 21, 2014)

| | | |
|---|---|---|
| DAVID R. SMITH, | ) | Military Pay; National |
| | ) | Guard; RCFC 52.1; Motion |
| | ) | for Judgment on the |
| Plaintiff, | ) | Administrative Record; |
| | ) | Motion to Supplement the |
| v. | ) | Administrative Record. |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Phillip L. Davidson, Nashville, TN, for plaintiff.

Douglas G. Edelschick, Trial Attorney, with whom were Stuart F. Delery, Assistant
Attorney General; Bryant G. Snee, Acting Director; Martin F. Hockey, Jr., Assistant
Director, Commercial Litigation Branch, Civil Division, United States Department of
Justice, Washington, DC, for defendant.  Bryce G. Poole, United States Air Force Civil
Litigation, of counsel.

## ORDER AND OPINION

CAMPBELL-SMITH, Chief Judge

Lieutenant Colonel David R. Smith (Lt. Col. Smith or plaintiff) claims that he was
entitled to certain job protections specified in the Air National Guard Instructions
(ANGI).[1]  He asserts that the Tennessee Air National Guard violated these instructions

---

[1]     Plaintiff provided a copy of the regulatory instructions governing the Air National
Guard Active Guard Reserve (AGR) Program, ANGI 36-101 (June 2010).  See ECF No.
15.  Approximately 80 ANGI govern the work of and employment in the Air National
Guard; they are available on the website of the National Guard Bureau,
http://www.ngbpdc.ngb.army.mil/pubs/angseries.htm.

when it failed to restore him to a position in the Active Guard Reserve following a tour of duty he performed at the Naval War College.[2]  See Am. Compl. ¶¶ 4.1-4.2, 4.4, ECF No. 7; see also Pl.'s Br. Supp. Summ. J. Admin. R. 3-4, ECF No. 19 (Pl.'s Mot. for JAR).

Lt. Col. Smith also claims that his career status in the Active Guard Reserve entitled him to continued employment therein. See Am. Compl. ¶¶ 3.3, 4.2, 4.4; see also Pl.'s Mot. for JAR 3-4. He contends that the Tennessee Air National Guard violated an Air National Guard Instruction when it failed to provide him with a position in the Active Guard Reserves, upon the completion of his Naval War College tour of duty.  See Am. Compl. ¶¶ 3.3, 4.2, 4.4; see also Pl.'s Mot. for JAR 3-4.

Lt. Col. Smith seeks damages of back pay, benefits and restoration to a position in the Active Guard Reserve.  Am. Compl. 4; see also Pl.'s Mot. for JAR 4.

The government filed the administrative record (AR) in May 2013.  ECF No. 11. Plaintiff filed his first motion to supplement the administrative record in July 2013, ECF No. 16, which the court granted, ECF No. 18.  Thereafter, the parties filed cross-motions for judgment on the administrative record.  Plaintiff subsequently filed a second motion to supplement the administrative record, to which defendant filed a response in opposition.  Pursuant to Rule 52.1(c)(3) of the Rules of the United States Court of Federal Claims (RCFC), defendant did not file an answer.  All motions are fully briefed and are ripe for decision.

For the reasons explained below, plaintiff's second motion to supplement the administrative record is **GRANTED**; plaintiff's motion for judgment on the administrative record is **DENIED**; and defendant's motion for judgment on the administrative record is **GRANTED**.

Before evaluating the parties' motions for judgment on the administrative record, the court addresses plaintiff's second motion to supplement the administrative record.

---

[2]       In his amended complaint, Lt. Col. Smith also relies on Department of Defense Instruction (DoDI) 1205.18, which he describes as governing personnel management of the Active Guard Reserve Program for the U.S. Department of Defense.  See Am. Compl. ¶¶ 1, 3.1, 3.5, 3.6, 4, 4.1, 4.3.  Lt. Col. Smith does not, however, mention DoDI 1205.18 in either his motion or his response, as correctly noted by the government in its motion, see Def.'s Cross-Mot. for JAR 2.

## I.      PLAINTIFF'S SECOND MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Plaintiff seeks to add to the administrative record previously filed in this matter, see ECF Nos. 11 & 16-2, the June 10, 2010 Order pursuant to which he attended the Naval War College, see June 10, 2010 Order, ECF No. 23, at 3-6 (2010 Order).  Plaintiff asserts that this 2010 Order is an important part of his personnel file and provides relevant evidence for this court's consideration.  See Pl.'s 2d Mot. to Supplement 1, ECF No. 23.

Defendant opposes plaintiff's motion.  Defendant argues that the 2010 Order was superseded by a June 24, 2011 Order (2011 Order) already in the administrative record.  See Def.'s Resp. to Pl.'s 2d Mot. to Supplement 1, ECF No. 25.  Defendant further argues that the 2010 Order has only marginal relevance and is cumulative of orders already in the administrative record.  See id.

A.      Legal Standard

The rules of this court specify that "[w]hen proceedings before an agency are relevant to a decision in a case, the administrative record of those proceedings must be certified by the agency and filed with the court."  RCFC 52.1(a).

When a decision is reached by other than formal adjudication, the decision is deemed an informal agency decision.  While it has been noted that the administrative record informing such decisions may be less clearly defined than the record in a formal adjudication, guiding principles nonetheless exist.  See 3 Charles H. Koch, Jr., Admin. Law & Practice § 8.27[1] (3d ed. Mar. 2013).  The administrative record to be considered by a reviewing court shall include all the materials compiled by the agency before it made its decision.  See id. (citing Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997); Sierra Club v. Slater, 120 F.3d 623, 637-38 (6th Cir. 1997); Northcoast Envtl. Ctr. v. Glickman, 136 F.3d 660, 665 (9th Cir. 1998)).

It is understood that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  Camp v. Pitts, 411 U.S. 138, 142 (1973).  Limiting review to the administrative record before the agency at the time it made its decision ensures that the reviewing court does not convert the arbitrary and capricious standard, under which it properly reviews an agency decision, into a de novo review.  See Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (citation omitted).

[T]he administrative record, . . . should be <u>supplemented only</u> if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act]." <u>Axiom</u>, 564 F.3d at 1381 (emphasis added); <u>see also</u> <u>Holmes v. United States</u>, 98 Fed. Cl. 767, 780 (2011) ("To perform an effective review pursuant to the [APA], the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process.") (citation omitted).

The standards for the admission of additional documents to the administrative record differ depending on whether the proposed document would complete the filed administrative record, or supplement it. <u>See</u> <u>Linc Gov't Servs., LLC v. United States</u>, 95 Fed. Cl. 155, 158 (2010) (order denying a motion to supplement the administrative record); <u>see also</u> <u>Joint Venture of Comint Sys. Corp. v. United States</u>, 100 Fed. Cl. 159, 167 (2011) (order granting-in-part a motion to supplement the administrative record) (stating that the "[a]dmission of new evidence into an agency-assembled record is a separate and distinct issue from completing the record through incorporation of materials generated or considered by the agency itself during the procurement process").

If an agency omits information that was generated and considered by the agency, then it is "properly part of the administrative record," and is admissible to complete the record, not to supplement it. <u>Linc</u>, 95 Fed. Cl. at 158 (citation omitted) (denying motion to complete record because the material was never before the agency); <u>see also</u> <u>Kerr Contractors, Inc. v. United States</u>, 89 Fed. Cl. 312, 335 (2009) (admitting documents which should have been filed in the administrative record because they contained information relied upon by the agency as it made its decision), <u>aff'd</u>, 374 Fed. Appx. 979 (Fed. Cir. 2010); <u>Ala. Aircraft Indus., Inc.-Birmingham v. United States</u>, 82 Fed. Cl. 757, 765 (2008) (order partially granting motion to supplement administrative record) (admitting documents which were available to the agency at the time it made its decision and were considered in its decision).

In contrast, "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" <u>Axiom</u>, 564 F.3d at 1380 (citing <u>Murakami v. United States</u>, 46 Fed. Cl. 731, 735 (2000), <u>aff'd</u>, 398 F.3d 1342 (Fed.Cir.2005)). In <u>Axiom</u>, the trial court allowed the plaintiff to supplement the administrative record filed by the government with various documents that were not before the agency when it made its decision. <u>See</u> <u>id.</u> at 1379. On review, the Federal Circuit held that this court may not add "documents to the record without evaluating whether the record before the agency was sufficient to permit meaningful judicial review." <u>Id.</u> at 1380.

4

B.    Discussion

To evaluate plaintiff's motion, the court must determine whether the proposed document would complete the administrative record or supplement it.  Generally, the government receives a rebuttable presumption that it has properly designated the administrative record.  See Eskridge Research Corp. v. United States, No. 10-50C, 2010 WL 1837799, at *2 (Fed. Cl. May 3, 2010) (order requiring certification of the administrative record under Rule 52.1).  But, that presumption of a complete record no longer applies here because the government earlier acknowledged–when plaintiff first sought to supplement the administrative record–that it had inadvertently excluded documents from the administrative record.

In its response to plaintiff's first motion to supplement the administrative record, the government conceded that "44 pages of documents were inadvertently excluded from the AR."  Def.'s Resp. 2, ECF No. 17.  The government added, "we do not oppose supplementation of the AR because each of these documents is of a type that normally [would] be included in the AR."  Id.

The pending motion to supplement the administrative record is plaintiff's second.  Now plaintiff seeks to add the 2010 Order that authorized his tour of duty at the Naval War College.

1.    The 2010 Order was Available to the Agency and is Relevant to a Decision in this Case

Rule 52.1(a) requires the filing of an administrative record of proceedings relevant to an agency's decision on a matter to be reviewed by this court.  Here, plaintiff seeks to add to the administrative record the order directing his attendance at the Naval War College.  See 2010 Order.  Plaintiff claims that certain National Guard job protections obligated the Tennessee Air National Guard to provide him with a position in the Active Guard Reserves upon the completion of his Naval War College tour of duty.  See Am. Compl. ¶¶ 4.1-4.2, 4.4; see also Pl.'s Mot. for JAR 3-4.

As documented in the administrative record, plaintiff informed the Tennessee Air National Guard in April 2011 that, under ANGI 36-101, he believed his Naval War College tour of duty entitled him to return to a position in the Active Guard Reserve upon the completion of his tour.  See AR 7.  Nonetheless, the Tennessee Air National Guard did not restore plaintiff to a position in the Active Guard Reserve, see Declaration of Adjutant General Terry M. Haston (Haston Decl.) ¶ 6, May 17, 2013, AR 1-4; AR 20,

and in January 2012, it terminated his full-time service in the Air National Guard, <u>see</u> AR 19.

The question before the court is whether the Tennessee Air National Guard failed to follow its own rules when it declined to restore Lt. Col. Smith to a position in the Active Guard Reserve following the completion of his Naval War College tour of duty.

The 2010 Order directing Lt. Col. Smith's Naval War College tour of duty was available to the agency at the time of its decision, and what impact that tour of duty had on the decision regarding whether Lt. Col. Smith would continue his service in the Tennessee Air National Guard Active Guard Reserve bears directly on the merits of plaintiff's claim. Thus, the information contained in the 2010 Order is relevant to the decision in this matter.

2.      Defendant's Position

Defendant objects to adding the 2010 Order to the administrative record primarily because, it asserts, the order was "superseded" by the 2011 Order. Def.'s Resp. to Pl.'s 2d Mot. to Supplement 2 (citing AR 26-27). However, review of the two orders reveals otherwise; the 2011 Order did not supersede the 2010 Order.

The 2011 Order modified the 2010 Order by changing the end date of Lt. Col. Smith's Naval War College tour of duty from July 19, 2011 to June 10, 2011.[3] <u>See</u> AR 26 ¶¶ 5-6. The 2011 Order expressly states that "[t]his modification and all previous modifications (if applicable) must accompany the original order," AR 27 ¶ 7, and it identified the 2010 Order as one such "previous modification[]" <u>Id.</u> Because the text of the 2011 Order relied upon by the government makes clear that the 2011 modification must accompany the original 2010 Order, defendant should have included the original 2010 Order in the administrative record filed with the court, along with the modification provided in the 2011 Order.

In its objection to plaintiff's request to supplement the administrative record, defendant relies on the <u>Axiom</u> case for the proposition that the court may not add "documents to the record without evaluating whether the record before the agency was sufficient to permit meaningful judicial review." Def.'s Resp. to Pl.'s 2d Mot. to Supplement 2.

<u>Axiom</u>, however, addressed the circumstance in which a plaintiff sought to add documents to the administrative record that were <u>not</u> before the agency at the time of its

---

3       This modification is not relevant to this dispute.

decision.  See Axiom, 564 F.3d at 1379.  Axiom did not address the circumstance presented here, in which the proposed document was before the agency at the time of its decision, but was not included in the administrative record.  As has been noted previously, reliance on Axiom is misplaced where the plaintiff merely seeks to complete the administrative record before the reviewing court with documents that were before the agency at the time of its decision.  See Joint Venture, 100 Fed. Cl. at 167.

C.      Conclusion

        The 2010 Order is not extra-record evidence.  Rather, the four-page document was part of the administrative record of proceedings before the agency at the time it made its decision and is relevant to the court's review in this case.  The text of the subsequently issued 2011 Order requires the maintenance of orders and their modifications together.  Thus, the 2010 Order should have been included in the administrative record that defendant filed pursuant to RCFC 52.1(a).

        Plaintiff's second motion to supplement the administrative record is **GRANTED**.  The 2010 Order presented by plaintiff (ECF No. 23, at 3-6) is added to the administrative record.

## II.    CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

        Plaintiff has moved for judgment on the administrative record.[4]  Pl.'s Mot. for JAR.  Defendant filed a response and cross-motion.  ECF No. 22 (Def.'s Cross-Mot. for JAR).  Plaintiff has filed a response to defendant's cross-motion and a reply to defendant's response.  ECF No. 24.  In turn, defendant filed a reply.  ECF No. 26.

        Lt. Col. Smith claims that his attendance at Naval War College from July 2010 to July 2011 constituted what is known as a Title 10 Statutory Tour.  See Pl.'s Mot. for JAR 3-4.  He asserts that completion of a Title 10 Statutory Tour entitled him to return to service in the Active Guard Reserve.  See Am. Compl. ¶¶ 4.1-4.2; Pl.'s Mot. for JAR 3-4.  Alternatively, Lt. Col. Smith claims that his career status in the Active Guard Reserve

---

[4]      For the purposes of the cross-motions for judgment on the record, the administrative record consists of three separate filings: the administrative record filed by defendant, ECF No. 11 (referred to as AR__); the supplemental 44 pages of documents filed by plaintiff and admitted on July 12, 2013, ECF No. 16-2 (referred to as ARS__); and the 4 page supplemental document filed by plaintiff and admitted in this Order and Opinion, ECF No. 23, at 3-6 (referred to as 2010 Order).

entitled him to continue his full-time employment with the Tennessee Air National Guard Active Guard Reserve.  See Am. Compl. ¶¶ 3.3, 4.2; see also Pl.'s Mot. for JAR 3-4.

A.      Background

1.      Lt. Col. Smith's Employment in the Tennessee Air National Guard

Lt. Col. Smith joined the Tennessee Air National Guard in 1993 as a traditional guardsman[5] in the 118th Air Wing.  See Am. Compl. ¶ 3; AR 5 ¶ 1.  He was selected for a position in the Active Guard Reserve in February 2002, and served continuously therein until July 5, 2010.  See Am. Compl. ¶ 3; AR 23 ¶ 12; ARS 28.  Unlike traditional guardsmen, Active Guard Reserve personnel serve full-time.  See Am. Compl. ¶ 3; ANGI 36-101 ¶ 2.2.  The Active Guard Reserve Program is intended to be a career program; service in this program may lead to an active duty military retirement after a service member has attained the required years of active service.  See ANGI 36-101 ¶ 1.1.

In February 2008, after serving six years in the Active Guard Reserve, Lt. Col. Smith attained career status.  See Am. Compl. ¶¶ 3.2-3.3; see also ANGI 36-101 ¶ 2.2.1.1.  In the Active Guard Reserve, he served in the 45th Civil Support Team/Weapons of Mass Destruction (CST/WMD) unit as the Deputy Commander from 2002 through 2006.  See Haston Decl. ¶ 3; AR 5 ¶ 1; ARS 15.  In September 2006, he was promoted to the position of unit Commander.  See Haston Decl. ¶ 3; AR 5 ¶ 3; ARS 15.

As a matter of policy, the position of unit Commander is limited in term to either a three or four-year tour.  See Haston Decl. ¶¶ 3-4; AR 5 ¶ 3.  This term limitation allows command to move multiple officers through this position of leadership.  See Haston Decl. ¶ 4.

When Lt. Col. Smith's tour as unit Commander was nearing its end in May 2010, he began exploring options with his superiors for his next assignment.  See id. at ¶ 3, 5; AR 5 ¶ 4.  Ultimately, Lt. Col. Smith elected to apply for admission to a full-time one-year graduate program at the Naval War College in Newport, Rhode Island, see Haston Decl. ¶ 5; ARS 1-2, and as reflected in the 2010 Order, he was accepted into the program, see AR 5 ¶ 5; 2010 Order.

---

[5]      As described in the Adjutant General's declaration, a traditional guardsman is a part-time service member who drills one weekend per month and two weeks per year.  See Haston Decl. ¶ 3; Def.'s Cross-Mot. for JAR 3, 5.  The Adjutant General is responsible for overseeing all personnel matters within the Tennessee National Guard, which includes the Air National Guard.  See Haston Decl. ¶ 1.

Lt. Col. Smith remained a member of the Active Guard Reserve until July 5, 2010, during which time he assisted with his successor's transition into command.  See AR 23, 28; Def.'s Cross-Mot. for JAR 6.  The next day, he began a full-time active duty tour at the Naval War College, see Am. Compl. ¶ 3.4; 2010 Order ¶ 4, which concluded on June 10, 2011, see AR 26 ¶ 6.

When Lt. Col. Smith's Naval War College tour drew to its conclusion, he again explored options with his superiors for his next assignment.  See Haston Decl. ¶ 6; AR 6. Lt. Col. Smith's stated desire was to return to a full-time position in the Active Guard Reserve.  See AR 7-9; ARS 28.  However, he was not selected for any of the Active Guard Reserve positions for which he applied.  See AR 16; see also Def.'s Cross-Mot. for JAR  9.

Following the completion of his Naval War College tour, Lt. Col. Smith served in a full-time temporary position as an Intelligence Operations Specialist from July 5, 2011 to January 14, 2012.  See Haston Decl. ¶ 6; AR 19-20.  This position was not an Active Guard Reserve one, see AR 20, and once this temporary position expired, Lt. Col. Smith reverted to his earlier position as a part-time traditional guardsman in the 118th Air Wing, see Haston Decl. ¶ 6.

2.      Job Protections Afforded to Active Guard Reserve Members

The Air National Guard provides job protections for Active Guard Reserve members serving in either voluntary duty in a Title 10 Statutory Tour, see ANGI 36-101 ¶ 2.8.3, or involuntary federal active duty as a result of a presidential call-up or order,[6] see ANGI 36-101 ¶ 7.8.1.

The Active Guard Reserve confers career status upon service members meeting certain requirements.  Lt. Col. Smith asserts that those service members who have obtained career status are extended particular job protections.  See Am. Compl. ¶ 4.2. Alleging that he was denied the job protections to which he was entitled, Lt. Col. Smith filed the instant action.

---

[6]      Lt. Col. Smith makes no claim that he was subject to involuntary federal active duty.  He nonetheless invokes the protection of ANGI 36-101 ¶ 7.8.1, the instruction which addresses such service.  See Am. Compl. ¶¶ 3.4-3.5, 4.1-4.2; see also Pl.'s Mot. for JAR 3-4.

The court examines the protections afforded by the cited provisions of the Air National Guard Instructions before considering plaintiff's claim.

a.      Voluntary Title 10 Statutory Tour

Lt. Col. Smith specifically relies on the job protections set forth in ANGI 36-101 ¶ 2.8.3.  See Am. Compl. ¶¶ 3.4-3.5, 4.1-4.2; see also Pl.'s Mot. for JAR 3-4.  This instruction applies to Active Guard Reserve members who volunteer to serve a Title 10 Statutory Tour.  See ANGI 36-101 ¶ 2.8.3.  This regulatory provision affords Active Guard Reserves members who have served a Title 10 Statutory Tour "restoration rights" for a period of up to five years after completion of such tour of duty.  Id.  These "restoration rights" entitle qualified members to revert to the same military grade held prior to the statutory tour assignment.  Id.

> [Active Guard Reserve] personnel who enter an [Air National Guard] Title 10 Statutory Tour, assigned to the [National Guard Bureau Unit Manpower Document] (e.g. Title 10 U.S.C., Sections 10211, 10305, 12402 and 12310) have restoration rights not to exceed five years, to the State from which they entered their initial Statutory Tour. . . .  Each [Active Guard Reserve] Airman who enters an [Air National Guard] Title 10 Statutory Tour must be informed in writing and acknowledge such notice that the individual is entitled to revert to the same military grade held prior to the Statutory Tour assignment.

Id. (emphasis added).

The Air National Guard defines a statutory tour as a "Title 10 Section 12310 active duty tour attached to [the National Guard Bureau[7] in accordance with] ANGI 36-6, ANG Statutory Tour Program Policies and Procedures."  Id. at 64.

Referenced in ANGI 36-101 ¶ 2.8.3 are statutes that furnish authority for Active Guard Reserve members to assume positions in various policy and management capacities.  Such positions might include: preparing and administering the policies and regulations affecting reserve components (10 U.S.C. § 10211); participating in the Reserve Forces Policy Committee (10 U.S.C. § 10305(a)); assuming active duty in the

---

[7]      The National Guard Bureau is a component of the Department of Defense.  It serves as a conduit for communication between the Departments of the Army and Air Force and the states on matters pertaining to the National Guard.  See 10 U.S.C. § 10501.

National Guard Bureau (10 U.S.C. § 12402(a)); and assuming active duty in the Active Guard and Reserve organizing, administering, recruiting, instructing, or training the reserve components (10 U.S.C. § 12310(a)(1); 10 U.S.C. § 12301(d)).

b.       Involuntary Federal Active Duty in Support of a Named Mission as Part of an Active Duty Major Command

Lt. Col. Smith alternately relies on ANGI 36-101 ¶ 7.8.1.  See Am. Compl. ¶¶ 3.4-3.5, 4.1-4.2; see also Pl.'s Mot. for JAR 3-4.  This instruction states that members of the Active Guard Reserve who are "called[8] or ordered to Title 10 federal active duty . . . supporting Active Duty requirements for operations/missions/exercises/training (Title 10 U.S.C. 12301(d), 12302, 12304, or 10147) will not be terminated from their Title 32 U.S.C. Section 502(f) orders."  ANGI 36-101 ¶ 7.8.1.

Paragraph 7.8.1 applies to a call or order of Air National Guard members, by the Secretary of the Air Force, to active duty in support of a named mission as part of an Air Force Major Command.[9]  See id. ¶ 7.8.2; see also id. ¶ 6.1.2.

The Secretary of the Air Force has the authority to order specific service members, including members of the Air National Guard, to active duty "without the consent of the persons" affected.  See 10 U.S.C. § 12301(a) (Reserve component[10]); see also ANGI 36-2001 ¶ 6.3.2.1 (referring to members called to involuntary active duty under 10 U.S.C. §§ 12301, 12302 & 12304).

---

[8]       A "call" refers to the orders issued by Congress and the President of the United States that summon members of the Air National Guard into federal service as the President deems necessary.  See Air National Guard Special Orders, ANGI 33-101, at 22 (Mar. 2007).

[9]       The United States Air Force is organized into the following ten Major Commands: Air Combat Command, Air Education and Training Command, Global Strike Command, Material Command, Reserve Command, Space Command, Special Operations Command, Mobility Command, Pacific Air Force and U.S. Air Force in Europe.  See U.S. Air Force, e-publishing, http://www.e-publishing.af.mil/ (Under Product Index, Publications, select "Major Commands") (last visited Jan. 10, 2014).

[10]      Reserve components include the Air National Guard of the United States, see 10 U.S.C. § 10101(5), which includes federally recognized units of the Air National Guard, see 10 USC § 10111 (1); see also Def.'s Cross-Mot. for JAR 2-3.

11

Airmen in the Active Guard Reserve provide "individual consent" to such Title 10 duty upon acceptance of a position in the Active Guard Reserve.  A mandatory statement to this effect appears in the remarks section of a duty order.  See ANGI 36-101 ¶¶ 6.1.2, 7.8.  The statement provides:

> By order of the Secretary of the Air Force, or delegated official, [Air National Guard Active Guard Reserve] Members will automatically convert to Title 10 U.S.C. 12301(D) when performing [Outside Continental United States] duty.  Members will revert to their original Title 32 U.S.C. 502(F) status upon return to the [Continental United States].

AR 30 ¶ 7.  Once this duty tour is complete, members revert to their prior status.  Id.

ANGI 36-101 ¶ 7.8.1 makes no reference to a voluntary Title 10 statutory tour, the type of duty Lt. Col. Smith claims he performed, see Pl.'s Mot. for JAR 3-4.  But, because Lt. Col. Smith seeks the protection provided by ANGI 36-101 ¶ 7.8.1, the court has examined the instruction.

c.      Career Status

A member of the Active Guard Reserve attains what is known as career status after six years of service.  See ANGI 36-101 ¶ 2.2.1.  The achievement of career status requires that a service member receive further management under a career program.  See ANGI 36-101 ¶ 2.2.1.1.  As set forth in the Air National Guard Instructions, a career program affords a service member opportunities for promotion, when such advancement is consistent with the needs of the Air National Guard.  See ANGI 36-101 ¶ 1.1.

B.      Legal Standard

Jurisdiction over plaintiff's claim arises from the Tucker Act, 28 U.S.C. § 1491(a)(1) (2012) and the Military Pay Act, 37 U.S.C. § 204 (2006).  See Antonellis v. United States, 723 F.3d 1328, 1331 (Fed. Cir. 2013).  The Tucker Act confers jurisdiction on this court and waives defendant's sovereign immunity, see Greenlee Cmty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir. 2007); the Military Pay Act sets forth the requisite money-mandating authority, see Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004).  Claims under the Military Pay Act extend to claims for pay and benefits that a service member would have received absent a wrongful discharge.  See Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997).

The parties filed cross-motions for judgment on the administrative record pursuant to RCFC 52.1.  Rule 52.1 offers a procedure to parties who seek an expedited trial on a "paper record, [that] allow[s] fact-finding by the trial court." Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  "The Court of Federal Claims . . . is required to make factual findings under RCFC [52.1] from the record evidence as if it were conducting a trial on the record."  Id.

When resolving a motion for judgment on the administrative record, "the court must determine whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  Stine v. United States, 92 Fed. Cl. 776, 791 (2010) (citation omitted), aff'd per curiam, 417 Fed. Appx. 979 (Fed.Cir. 2011). To prevail, plaintiff must establish that the agency's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law."  Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006) (citation omitted).  Plaintiff's showing must be by "cogent and clearly convincing evidence."  Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citation omitted).

The court may review a military decision when the plaintiff argues that the military did not comply with a governing statute or regulation.  See Roth v. United States, 378 F.3d 1371, 1385 (Fed. Cir. 2004).  But, plaintiff's claim must be justiciable.  That is, it must be within the competency of the court to decide the issue, and there must be "tests or standards" that inform the court of the measure against which the conduct of the military is to be evaluated.  See Murphy v. United States, 993 F.2d 871, 873 (Fed. Cir. 1993) (citing Sargisson v. United States, 913 F.2d 918, 922 (Fed. Cir. 1990)).

The military is bound to follow those procedural regulations it has chosen to implement.  See id. (citing Sargisson, 913 F.2d at 921).  When determining whether the military has followed its own procedures, the court "is not called upon to exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard." Id.  This limited determination falls within the court's competency.

C.      Discussion

Plaintiff bases his claim on his full-time active duty federal training under Title 10 U.S.C. § 12301(d).  See Am. Compl. ¶¶ 3.4, 4.2; 2010 Order ¶¶ 1, 5.  The Military Pay Act applies to members of the National Guard participating in full-time training or other full-time duty.  See 37 U.S.C. § 204(a)(2).  Thus, Lt. Col. Smith's action comes within the jurisdiction of this court.

Plaintiff relies upon select provisions of ANGI 36-101.  The Air National Guard Instructions are issued by the Chief National Guard Bureau, and the front page of each instruction bears the marking "Compliance with this Publication is Mandatory."  See, e.g., ANGI 36-101, at 1.  Because the National Guard Bureau has chosen to implement a set of mandatory instructions for the Air National Guard, defendant is bound to follow them.

The facts regarding Lt. Col. Smith's service are not in dispute.  What is in dispute is the effect of his tour of duty at the Naval War College.  The issue to be decided is whether that tour of duty entitled Lt. Col. Smith to any of the job protections outlined in ANGI 36-101 ¶¶ 2.8.3 or 7.8.1, or whether his attained career status in the Active Guard Reserve entitled him to continued employment therein.

Review of the administrative record and the relevant Air National Guard Instructions shows that Lt. Col. Smith's Naval War College duty did not entitle him to the job protections in either ANGI 36-101 ¶ 2.8.3 or ¶ 7.8.1.  Lt. Col. Smith did not volunteer for a Title 10 Statutory Tour.  Nor was he involuntarily called up for federal active duty service in support of a named mission as part of an active duty Major Command.  Moreover, his career status did not entitle him to continued employment in the Active Guard Reserve.  Because Lt. Col. Smith qualified for none of the job protections outlined in ANGI 36-101, on which he has based his claim, the court can find no violation of the governing Air National Guard Instructions in defendant's failure to provide plaintiff with a full-time position in the Active Guard Reserve after completion of his Naval War College tour of duty.

1.    Lt. Col. Smith's Professional Military Education

Lt. Col. Smith applied for a tour at the Naval War College.  See ARS 1-2.  Upon completing his studies in June 2011, Lt. Col. Smith was awarded a Master of Arts in National Security and Strategic Studies.  See ARS 29-30.  The order of assignment authorizing Lt. Col. Smith's attendance at the Naval War College describes the "type of duty" as "School Professional Military Education (PME)."  2010 Order ¶ 1 (citing 10 U.S.C. § 12301(d) and ANGI 36-2001[11]).  The pertinent instruction governing

---

[11]    The 2010 Order on which plaintiff relies cites, as one of the two instructions governing the member's tour of duty, Professional Military Education, ANGI 36-2301 (Jan. 2007).  See 2010 Order ¶ 23.  The version of ANGI 36-2301 available on the National Guard Bureau website was modified in August 2012, after the issuance of the 2010 Order.  Because the currently posted instruction was not in effect at the time of Lt. Col. Smith's tour of duty, the court does not consider it in this opinion.

Management of Training and Operational Support within the Air National Guard is ANGI 36-2001.  ANGI 36-2001 (Oct. 2009).

2.      Professional Military Education is Not a Voluntary Title 10 Statutory Tour

As defined in the Air National Guard Instructions, Formal School Training is a "category of active service . . . to accomplish required formal school . . . upgrade training, refresher/proficiency training, or professional military education."  ANGI 36-2001 ¶ 5.1 (emphasis added).  Lt. Col. Smith's Naval War College tour of duty involved the pursuit of professional military education, and thereby constituted Formal School Training.

The Air National Guard considers those engaged in Formal School Training to be on Active Duty for Training, while those on a Title 10 Statutory Tour to be on Active Duty for Other than for Training.  See id. tbl. 1.2. The Air National Guard's detailed categorization of the duty relationships of various types of service is set forth in Table 1.2 of ANGI 36-2001.  The table outlines the categories of training that correlate to the three duty types: inactive duty for training; active duty for other than for training; and active duty for training.  As excerpted here, the table clearly shows that Formal School Training, which includes professional military education, does not constitute a Title 10 Statutory Tour.

| Table 1.2 Duty Relationships (excerpt) Source: ANGI 36-2001 | | | |
|---|---|---|---|
| TYPE SERVICE | TYPE DUTY | TRAINING CATEGORY | TITLE |
| Active Duty or Full Time National Guard Duty | Active Duty for Other than for Training (ADOT) | . . .<br><br>Statutory Tour (STAT TOUR) | . . .<br><br>10 |
| | Active Duty for Training (ADT) | . . .<br><br>Formal School Training (FST) | . . .<br><br>10/32 |

Other instructions identify indicants of a Title 10 Statutory Tour that would be expected in the record of a service member who had completed such a tour, but are missing in this case.  In particular, the instruction governing the statutory tour program, ANGI 36-6, states that "[o]rders [assigning applicants to a statutory tour] will not be published until the selectee/nominee has signed [National Guard Bureau] Form 830, Statutory Tour Statement of Understanding . . . and NGB/HR has completed all other required administrative processing."  The Air National Guard Statutory Tour Program Policies and Procedures 4, ANGI 36-6 (Nov. 2010) (emphasis added).  A sample of Form

830 is included in ANGI 36-6.  See id. at 19.  A service member selected for such a tour is required first to initial six separate paragraphs to indicate an understanding of the statements included therein, and then to sign the form at the bottom of the page.  See id. There is no copy of an executed Form 830 for Lt. Col. Smith in the Administrative Record, and he makes no assertion that he ever signed one.

Nor does the order assigning Lt. Col. Smith to attend the Naval War College make any reference either to the instruction governing statutory tours, ANGI 36-6, or to service in a Title 10 statutory tour.  See 2010 Order.  Rather, it refers to the instruction governing professional military education, ANGI 36-2301.  See id. ¶ 23.

Because the record establishes that Lt. Col. Smith's Naval War College tour of duty was not a Title 10 Statutory Tour, the job protections pertaining to a Title 10 Statutory Tour, as set forth in ANGI 36-101 § 2.8.3, do not apply to him.

3.       Professional Military Education is Not Involuntary Federal Active Duty in Support of a Named Mission as Part of an Active Duty Major Command

Turning again to the Air National Guard's detailed tabulation of the duty relationships of various types of service, the instructions make clear that involuntary federal active duty under Title 10 U.S.C. § 12301 is characterized as "Active Duty for Other than for Training."  ANGI 36-2001 tbl 1.1 (definition for ADOT).  Such duty is described as follows:

Active duty to support active component or reserve component missions.  It includes the categories of [Active Duty for Operational Support] (formerly active duty for special work (ADSW)), [Active Guard Reserve] duty and involuntary [Active Duty in accordance with] 10 U.S.C. Secs. 12301,[12] 12302, and 12304.  Training may occur in the conduct of ADOT.

ANGI 36-2001 tbl. 1.1. (emphasis added).

As addressed in the prior discussion section of this Opinion, the Air National Guard considers the Formal School Training undertaken by Lt. Col. Smith to be Active Duty for Training, which is a different type of duty.  See id. tbl. 1.2.  As described in the

_____

[12]      The Air National Guard makes no distinction between members of the Air National Guard who serve without their consent under 10 U.S.C § 12301(a), and members of the Active Guard Reserve who serve with individual consent under 10 U.S.C. § 12301(d).

pertinent instructions, Formal School Training, which includes professional military education, is not Active Duty for Other than for Training.

Moreover, the documentary evidence of this type of Title 10 active duty that would be expected in the record of a service member who had served such a tour is missing here and Lt. Col. Smith makes no reference to it.

This evidence would be found in a service member's duty order.  As required by the instructions, when Active Guard Reserve airmen perform Title 10 duty in support of Air Force active duty requirements, for 30 or more consecutive days, the remarks section of the issued Active Guard Reserve order must be amended to include:

> Authority in which they are called to Title 10, inclusive dates of the Title 10 duty, named mission they are supporting, and active duty [Major Command] they are being tasked to support.  An example is as follows: "AGR Airman will convert to Title 10 U.S.C. Section 12301(d) in support of OPERATION ENDURING FREEDOM from 15 January 2009 to 26 May 2009, [Gaining Major Command: Air Combat Command].

ANGI 36-101 ¶ 7.8.2 (emphasis added); see also ANGI 36-101 ¶ 6.1.2 (stating that Active Guard Reserve orders will be amended to reflect the Title 10 authority, duty inclusive dates, named mission and Gaining Major Command being supported, while on Title 10 duty.)

The 2010 Order under which Lt. Col. Smith attended the Naval War College contains no such language.  See 2010 Order.  Rather, the 2010 Order indicates that Lt. Col. Smith was assigned to a "Federal Training Mission."  Id. ¶ 5.  In addition, the remarks section of the order discharging Lt. Col. Smith from active duty at the completion of his Naval War College tour of duty states "Member served on [Active Duty] in support 10 USC 12301(d) for School Professional Military Education Naval War College from 6-JUL-2010 – 13-Jun-2011." AR 22 ¶ 18 (emphasis added).

The relevant Air National Guard Instruction provides that an airman is deemed a member of the Active Guard Reserve while performing Title 10 duty in support of Air Force active duty requirements.  See ANGI 36-101 ¶ 7.8.  But, Lt. Col. Smith was separated from the Active Guard Reserve on July 5, 2010.  See AR 23 ¶ 18 (indicating that member served on active duty in support of an AGR tour program according 32 USC 502(f) & ANGI 36-101 from 1-Feb-2002 to 5-July-2010); AR 23 ¶ 28 (noting separation due to completion of AGR military duty tour).  This separation occurred the day before Lt. Col. Smith began his tour of duty at the Naval War College, on July 6, 2010.  See

2010 Order ¶ 4.  Thus, he was not a member of the Active Guard Reserve when he entered Title 10 active duty.

Lt. Col. Smith has not asserted that his Naval War College tour of duty should be considered involuntary federal active duty.  Nor has he asserted that he supported a named mission as part of an active duty Major Command, and his attendance at a military college to pursue full-time graduate studies – for which he made application and was accepted – cannot be regarded as such duty.

Because the record establishes that Lt. Col. Smith was not involuntarily called to federal active duty in support of a named mission as part of an active duty Major Command, the job protections that pertain to involuntary federal active duty, as outlined in ANGI 36-101 ¶ 7.8.1, do not apply to him.

4.      Career Status Provides No Guarantee of Continued Employment

Air National Guard Instruction 36-101 states:

Continuation beyond the initial probationary period or service in [Active Guard Reserve] status for more than six years constitutes retention (career status) and shall require subsequent management under a career program.

Id. ¶ 2.2.1.1.  But, member retention, even with career status, is not a matter of right. Rather,

[c]areer retention and advancement will be dependent on existing force requirements and the needs of the unit, State, and Air National Guard.

Id. ¶ 2.2.1.2.  The instruction further provides:

[The career program of] Airmen granted career status (successive tour) shall be administered with the understanding that their service may lead to a military retirement after attaining the required years of [total active federal military service].  However, career status does not guarantee continuation to 20 years of [total active federal military service] and an [active duty] retirement.  Continuation to 20 years of [total active federal military service] and beyond is contingent on individual performance, career progression, mission requirements, force management and the needs of the unit, State, and Air National Guard.

18

Id. ¶ 9.9.1 (emphasis added).

As detailed in the relevant paragraphs of ANGI 36-101, the instruction governing the Active Guard Reserve Program, the chief benefit conferred upon service members who achieve career status is guidance in managing their full-time military careers in the Air National Guard.  Career status, however, does not provide any guarantee of continued employment in the Active Guard Reserve.

Lt. Col. Smith's attainment of career status in the Active Guard Reserve did not ensure his continued employment therein. Such expectation by plaintiff is inconsistent with the plain language of the relevant Air National Guard Instruction.

The administrative record does not support a finding that the Tennessee Air National Guard violated Air National Guard Instructions when it did not provide Lt. Col. Smith–who had attained career status–with continued employment in the Active Guard Reserve.

The administrative record in this case does not support plaintiff's claims; but it does support defendant's position.

D.    Conclusion

For the reasons set forth above, plaintiff properly seeks to complete the administrative record.  But he has not shown by cogent and clearly convincing evidence that the decision of the Tennessee Air National Guard was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.  Accordingly, it is hereby **ORDERED**:

1.    Plaintiff's second motion to supplement the administrative record (ECF No. 23) is **GRANTED**.

2.    Plaintiff's motion for judgment on the administrative record (ECF No. 19) is **DENIED**.

3.    Defendant's cross-motion for judgment on the administrative record (ECF No. 22) is **GRANTED**.

The Clerk of Court shall dismiss the complaint with prejudice and enter judgment in accordance with this decision.  No costs.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge